## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LORI FIENUP, | ) | |
| | ) | CASE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NOTICE OF AND** |
| | ) | **PETITION FOR REMOVAL** |
| AMERICAN NATIONAL BANK, and | ) | |
| LYNNE PAULY, | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to 28 U.S.C. §1441 and 1446, Defendants American National Bank ("ANB") and Lynne Pauly ("Pauly") (collectively "Defendants"), by and through their attorneys at Jackson Lewis, P.C., and in accordance with the applicable Federal Rules of Civil Procedure and Local Rules of the United States District Court for the District of Nebraska, remove this action from the Nebraska District Court in and for Douglas County to the United States District Court for the District of Nebraska. In support of this Notice of Removal, Defendants state as follows:

### BACKGROUND

1.      Plaintiff, Lori Fienup ("Plaintiff"), instituted this action on February 15, 2018, in the Nebraska District Court in and for Douglas County, under Case No. CI-18-1251 (the "State Action"), by filing a Complaint. On May 22, 2018, prior to serving the Defendants, Plaintiff filed an Amended Complaint ("Amended Complaint"). Plaintiff's Amended Complaint alleges three causes of action: (1) violation of the Family and Medical Leave Act (FMLA); (2) discrimination and retaliation in violation of the Americans with Disabilities Act Amendments Act (ADAAA) of 2008; and (3) discrimination and retaliation in violation of the Nebraska Fair Employment Practice Act (NFEPA). An accurate copy of the Amended Complaint is attached as part of "Exhibit A" to this Notice.

1

2.      Plaintiff served the Amended Complaint on Defendant ANB on May 25, 2018. The Return of Service Receipt is included as a part of Exhibit A.

## TIMELY REMOVAL

3.      This Notice of and Petition for Removal is filed within 30 days of service of the Amended Complaint on Defendant ANB. Thus, removal is timely pursuant to 28 U.S.C. § 1446(b).

## SUBJECT MATTER JURISDICTION

4.      Pursuant to 28 U.S.C. §1331, this Court has original subject matter jurisdiction over Plaintiff's FMLA and ADAAA claims because they arise under federal law. Specifically, Count One is based on alleged violations of the FMLA and Count Two is based on alleged violations of the ADAAA. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Count Three of Plaintiff's Amended Complaint, alleging NFEPA violations, because Count Three arises from the same case or controversy as Plaintiff's FMLA and ADAAA claims.

5.      In addition, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because (1) the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and (2) the dispute is between citizens of different states.

## VENUE

6.      Venue is proper in this Court and division pursuant to 28 U.S.C. § 1391(b)(2). The United States District Court for the District of Nebraska is the district court responsible for cases arising in Douglas County, Nebraska.

## STATEMENT OF FACTS DEMONSTRATING COMPLETE DIVERSITY OF PARTIES

7.      The Amended Complaint includes the following facts satisfying the jurisdictional requirement of 28 U.S.C. § 1332(a)(1) that this civil matter is between citizens of different states:

2

        a.      Pursuant to 28 U.S.C. § 1332(c), a corporation is deemed a citizen of the state in which it is incorporated and the state where it has its principal place of business.

        b.      Defendant ANB is a Nebraska company with its principal place of business in Douglas County, Nebraska. *See* Amended Complaint at ¶ 3.

        c.      Defendant Pauly is a resident of Nebraska. *See* Amended Complaint at ¶ 6.

        d.      Plaintiff is an Iowa resident and inhabitant of Mills County, Iowa. *See* Complaint at ¶ 2.

    8.      Plaintiff is a citizen of a different state than Defendants, and thus, this case satisfies the jurisdictional requirement of 28 U.S.C. § 1332(a)(1).

### AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

    9.      The jurisdictional amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied. The Complaint seeks lost wages, benefits, future earnings, emotional distress damages, attorneys' fees and costs, and punitive damages. The Amended Complaint does not include a demand for a specific sum, but, pursuant to 28 U.S.C. § 1446(c)(2)(A)(2), the damages sought exceed $75,000.00.

### NOTICE OF COMPLIANCE WITH PROCEDURAL REQUIREMENTS

    10.     An accurate copy of all process, pleadings, and orders from the State Action are attached in full as Exhibit "A." There are no matters currently pending in the State Action which require resolution by this Court.

    11.     The only counsel that have appeared in the State Action are Plaintiff's counsel, Kelly Brandon and Stephanie Costello of Fiedler & Timmer, P.L.L.C., 20615 Highway 370, Gretna, Nebraska, 68028, Phone (402) 316-3060, Fax (402) 513-6501, and email addresses: kelly@employmentlawnebraska.com; stephanie@employmentlawnebraska.com.

12.     Pursuant to 28 U.S.C. § 1146(d), Defendants will promptly provide written notice of the Removal to all parties to this action, and will file a Notice of Removal with a copy of this Notice of and Petition for Removal in the Nebraska District Court for Douglas County.

WHEREFORE, Defendants respectfully request that the State Action be removed to this Court and this Court assume jurisdiction over this matter for all further proceedings.

DATED this 12th day of June, 2018.

Respectfully Submitted,

American National Bank & Lynne Pauly, Defendants

By:      /s/ Sarah J. Millsap
         Sarah J. Millsap, #23840
         Catherine A. Cano, #25615
         JACKSON LEWIS P.C.
         10050 Regency Circle, Suite 400
         Omaha, Nebraska 68114
         Telephone: (402) 391-1991
         Fax: (402) 391-7363
         E-mail: sarah.millsap@jacksonlewis.com
         E-Mail: catherine.cano@jacksonlewis.com
         **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of June, 2018, the foregoing Notice of and Petition for Removal was served on all counsel of record in the State Action by electronic filing and email.

/s/ Sarah J. Millsap
Sarah J. Millsap

4853-1546-7367, v. 1

4

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI180001251
Transaction ID: 0006901390
Filing Date: 05/22/2018 11:40:23 AM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| LORI FIENUP | ) | Case No. CI18-1251 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| AMERICAN NATIONAL BANK, and | ) | |
| LYNNE PAULY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

COMES NOW, the Plaintiff, by and through her attorneys, and for her cause of action against the Defendants hereby states the following:

## INTRODUCTION

1.       This is an action under the Family Medical Leave Act (FMLA) challenging Defendants' retaliation and discrimination against Plaintiff with respect to Plaintiff's rights to FMLA-protected leave, the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), and Sections 48-1104 and 48-1114(1) of the Nebraska Fair Employment Practice Act challenging Defendants' discrimination and retaliation against her.

## JURISDICTION AND VENUE

2.       Plaintiff Lori Fienup is a resident of Glenwood, Mills County, Iowa.

3.       Defendant American National Bank is a Nebraska company with its principal place of business in Douglas County, Nebraska.

4.       The acts about which Plaintiff complains occurred in Douglas County, Nebraska.

5.       This court has original jurisdiction over the claims arising under state law and concurrent jurisdiction over the federal law claims.

6.       Defendant Lynne Pauly is a resident of Omaha, Douglas County, Nebraska.

1

# EXHIBIT A

7.      Venue is appropriate in this district under Neb. Rev. Stat. § 25-403.02.

## PROCEDURAL REQUIREMENTS

8.      On or about July 17, 2017, within 300 days of the acts she complains, Plaintiff Lori Fienup filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 563-2017-01760), which was duly filed with the Nebraska Equal Opportunity Commission

9.      On or about December 26, 2017, within 90 days of filing this complaint, Plaintiff Lori Fienup received her notice of right to sue from the EEOC.

## FACTUAL BACKGROUND

10.     On or about March 10, 2008, Plaintiff Lori Fienup (hereinafter "Lori") began working for Defendant American National Bank (hereinafter "ANB") as a Cash Management Specialist.

11.     On or about April 28, 2010, Lori was promoted to Lockbox Processor.

12.     On or about June 26, 2013, Lori was again promoted to Lockbox Supervisor.

13.     In November 2013, Lori was diagnosed with Parkinson's disease. Parkinson's disease is a progressive nervous system disorder that affects Lori's ability to walk, think, type, use the bathroom, and perform manual tasks. Lori's Parkinson's disease also affects Lori's normal cell growth, her neurological system, and the function of her brain.

14.     Between November and December 2013, Lori required approximately thirty-five days of FMLA leave for her disability.

15.     In 2014, Lori required no FMLA leave for her disability.

16.     Between September and December 2015, Lori required approximately forty-seven days of FMLA leave for her disability.

2

# EXHIBIT A

17.     In February 2016, Defendant Lynne Pauly (hereinafter "Pauly") became Lori's supervisor.

18.     On or about February 16, 2016, Lori was demoted from her Lockbox Supervisor position to Lockbox Processor.

19.     On April 18, 2016, Barb Czarnick, a human resources representative of Defendant American National Bank (hereinafter "ANB"), requested by e-mail and letter that Lori ask her doctor to file a formal request for accommodation.  At this point in time, Lori was physically shaking because of an adverse reaction to medication she was taking for her disability.

20.     On April 21, 2016, Lori formally requested a reasonable accommodation of grab bars in the bathroom and elevator access because of mobility impediments caused by her disability.

21.     Near the end of April 2016, instead of providing Lori with elevator access, the lockbox department was moved upstairs.

22.     In May 2016, the requested grab bars were installed in the bathroom.

23.     On or about May 17, 2016, Pauly referred to Lori and another employee, who had torn her ACL, as "her two gimps," to Lori's co-worker Liz Banks as well as within hearing distance of other employees.  Lori complained to Czarnick about Pauly's use of the derogatory term "gimp" in referring to herself and another employee who both had physical impairments. Upone information and belief, Lori's complaint was never investigated or addressed with Pauly.

24.     On or about May 20, 2016, Pauly asked Lori if she was stable enough to process three trays of postage through the machine.  Lori was not having any difficulty processing postage through the machine. Lori felt that Pauly's question was degrading and only made because of her disability.

# EXHIBIT A

25.     On or about May 25, 2016, Pauly called Lori into her office for a meeting. During the meeting, Pauly told Lori that she was requiring her to track every task she completed and the time it took her to complete each task.

26.     On or about June 7, 2016, Pauly told Lori she made several errors in an FTNI process. FTNI is the system ANB used to process loans. Pauly told Lori she was prohibited from processing loans in FTNI because Lori had made too many errors. Upon informed belief, Glean Walker (hereinafter "Walker"), the on-call employee in Pauly's department, also had made errors in FTNI but Pauly did not subsequently prohibit Walker from processing FTNI loans as she had prohibited Lori.

27.     Lori asked Pauly if she could have more training on FTNI because Lori had only received one day of training. Upon information and belief, other employees had received more training on FTNI than Lori. Pauly refused to give Lori the same amount of training as the other employees on the FTNI system.

28.     On June 8, 2016, Lori emailed Czarnick to complain about Pauly's discrimination. Lori explained to Czarnick that she had requested more training from Pauly to correct her errors in FTNI but Pauly had refused her request.

29.     On or about June 20, 2016, Lori called Czarnick and complained again that Lynn was discriminating against her because of her disability.

30.     On or about July 6, 2016, Pauly informed Lori that she should track the tasks she completed and the time it took her to complete the tasks. Pauly told Lori that because her doctor had not put any stipulations on Lori's request for accommodations about Lori's work product, her number of lock box processed should be higher.

31.     Lori often helped out with other tasks at ANB and worked a different schedule than her co-workers. Lori tried to explain to Pauly that her different tasks and schedule affected the

4

# EXHIBIT A

number of processing she could do. She explained that her totals were not higher because she, in addition to processing lock boxes, also researched items for customers, reset passwords for employees and customers, helped the Minnesota branch convert their lockbox customers to the WAUSAU remote deposit capture system, assisted them with any questions, helped index documents, helped process the mail, and charged customers at the end of the month for their lockbox service. Lori had over twenty customers to charge for the lockbox service, while Peggy Cooney Price, another lockbox processor, and Liston only each had one customer.

32.     Lori also explained that because her and her co-workers arrived at different times and left at different times, they received a different amount of work.

33.     Pauly ignored Lori's explanations and told Lori she needed to increase the amount of work she was completing.

34.     On or about July 12, 2016, Pauly told everyone in the lockbox department they did not have to keep track of every item they personally processed. Pauly then went over to Lori's work station and told Lori that she would still need to keep track of every item she processed and the time it took her to process it.

35.     On July 14, 2016, Pauly stated that there was going to be a rally on 30th and Ames at 5:00 p.m., near where the ANB branch Lori worked at was located. Pauly stated there was going to be an extra security officer at the bank. She also added that everyone was going to be gone besides one employee and Lori and said, "but who cares that they are still here."

36.     On July 26, 2016, Lori required one day of intermittent FMLA leave.

37.     On August 2, 2016, Lori emailed Pauly that she would need FMLA time from September 26, 2016 to September 30, 2016, in order to visit the Mayo Clinic in Rochester, Minnesota for treatment because of her disability.

5

# EXHIBIT A

38.     On August 3, 2016, Lori emailed FMLA paperwork to Human Resources to take leave for her disability between September 26 to September 30, 2016.

39.     On August 9, 2016, Lori used one hour and a half of intermittent FMLA leave.

40.     On August 30, 2016, Pauly held a "coaching session" with Lori because she felt Lori had not informed her of her system being down fast enough even though Lori had already reported the issue to the help desk.

41.     On September 14, 2016, Pauly wrote up Lori for debiting a customer account. Lori had debited that particular customer account many times and had not been written up before. Lori asked Pauly why she was being written up for an account that she debits each month for service fees. Pauly could not provide an answer to Lori.

42.     On September 26 through 30, 2016, Lori took FMLA leave to travel to the Mayo Clinic in Rochester, Minnesota to find out if she was a candidate for deep brain stimulation (DBS) surgery.

43.     On September 28, 2016, Lori's neurologist recommended that following Lori's DBS surgery that Lori would need "two to three months for [her] to get back to her usual self and do daily routine work." Lori's neurologist's recommendation was provided to ANB through the FMLA paperwork she submitted.

44.     On October 4, 2016, Lori required a half day of intermittent FMLA leave.

45.     On October 10 through 14, 2016, Lori required 26.25 hours of FMLA leave because of her disability.

46.     On October 25, 2016, Lori emailed Pauly and Czarnick that she had been approved for the DBS surgery on December 21, 2016; had an appointment scheduled for December 20, 2016; and that she would begin her FMLA leave starting on December 19, 2016.

6

# EXHIBIT A

47.     On October 13, 2016, Lori provided Czarnick with a written accommodation request asking for help getting to and from the building in her wheelchair and also a wheelchair accessible bathroom. On November 21, 2016, Pauly put Lori on a 90-day action plan.  Pauly wrote Lori up for an alleged delay in processing a customer's deposit.  The customer received the deposit less than an hour past normal business hours, the customer did not complain about the delay.

48.     On November 30, 2016, Czarnick declined Lori's accommodation request for help getting get to and from the building in her wheelchair and also declined to provide a wheelchair accessible bathroom.

49.     On December 15 through 16, 2016, Lori required 9 hours of intermittent FMLA leave because of her disability.

50.     On December 19, 2016, Lori began FMLA leave for her DBS surgery.

51.     On December 21, 2016, Lori underwent DBS surgery.

52.     On or about January 2 through February 22, 2017, Lori required FMLA leave to recover from her DBS surgery.

53.     On or about February 23, 2017, Lori returned to work.

54.     Lori's surgery greatly improved her performance at work.  The surgery enabled her to walk again without a wheelchair or walker.  It also improved the legibility of Lori's writing and increased her typing speed, which allowed Lori to complete tasks at a faster rate than before the surgery.

55.     On or about March 30 through April 3, 2017, Lori was sick with norovirus and did not go to work.

56.     On or about April 4, 2017, Lori returned to work.

57.     On or about April 4, 2017, Pauly yelled at Lori in front of her co-workers and accused her of falsifying her processing time logs because her performance had greatly improved.

7

# EXHIBIT A

58.     On April 5, 2017, Lori emailed Czarnick about Pauly again. Lori asked for advice on what to do because Pauly was continuing to single Lori out and Pauly had accused Lori of falsifying her processing time logs because Pauly "assum[ed] [Lori] [was] slow because of [her] condition." Czarnick asked for additional information and then told Lori she wanted to get both sides of the story.

59.     On April 6, 2017, Lori followed up with Czarnick asking when they would be able to meet.  Lori did not hear back from Czarnick.

60.     On April 7, 2017, Pauly and Czarnick, as representatives of ANB, terminated Lori.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA)
## DISCRIMINATION/RETALIATION

61.     Plaintiff repleads paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants are and were at all times material an "employer" within the meaning of the Family and Medical Leave Act (hereinafter "FMLA").

63.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the FMLA.

64.     Beginning in November 2013, Plaintiff was diagnosed with Parkinson's Disease, a "serious health condition" within the meaning of the FMLA.

65.     Plaintiff was entitled to intermittent protected leave under the FMLA.

66.     Plaintiff invoked her right to take intermittent protected leave under the FMLA.

67.     Plaintiff's leave is a protected activity under the FMLA.

68.     Defendants discriminated and retaliated against Plaintiff, and terminated her for exercising her rights under the FMLA.

# EXHIBIT A

69.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to her lost wages, benefits, future earnings, and other benefits of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount that will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for attorney fees, for the costs and expenses of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purposes of the Family and Medical Leave Act.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) OF 2008
## DISABILITY DISCRIMINATION/RETALIATION

70.     Plaintiff repleads paragraphs 1 through 69 as if fully set forth herein.

71.     Defendants are and were at all times material an "employer" within the meaning of the ADA Amendments Act of 2008 (hereinafter "ADAAA")

72.     Plaintiff's Parkinson's Disease is a physical impairment.

73.     Plaintiff's Parkinson's Disease substantially limits one or more of Plaintiff's major life activities, including, but not limited to, thinking, walking, performing manual tasks, concentrating, communicating.

74.     Plaintiff's Parkinson's Disease also substantially affects the normal functioning of her neurological and nervous systems.

75.     Plaintiff is disabled within the meaning of the ADAAA.

76.     Defendant perceived Plaintiff as disabled within the meaning of the ADAAA.

77.     Plaintiff is a qualified individual under the ADAAA and could perform the essential functions of her position with or without a reasonable accommodation.

78.     Plaintiff requested reasonable accommodations.

9

# EXHIBIT A

79.    Plaintiff complained of disability discrimination.

80.    Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment when it terminated her in violation of the ADAAA.

81.    Plaintiff's disability was a motivating factor in Defendant's discrimination.

82.    Plaintiff's protected activities were motivating factors in Defendant's retaliation and Plaintiff's termination.

83.    Defendants, personally or by their representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discrimination against Plaintiff in violation of the ADAAA, and by doing so are subject to punitive damages.

84.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for attorney fees, for the costs and expenses of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purposes of the Americans with Disabilities Act Amendments Act of 2008.

## COUNT III
## VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
## DISABILITY DISCRIMINATION/RETALIATION

85.    Plaintiff repleads paragraphs 1 through 84 as if fully set forth herein.

10

# EXHIBIT A

86.     Plaintiff is disabled within the meaning of the Nebraska Fair Employment Practice Act.

87.     Defendants are and were at all times material an "employer" within the meaning of the Nebraska Fair Employment Practice Act.

88.     Plaintiff's Parkinson's Disease substantially limited one or more of Plaintiff's major life activities, including, but not limited to, thinking, walking, performing manual tasks, concentrating, communicating.

89.     Plaintiff's Parkinson's Disease also substantially affected the normal functioning of her neurological and nervous systems.

90.     Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

91.     Plaintiff engaged in protected activity by requesting an accommodation and complaining about the disability discrimination she experienced.

92.     Defendant discriminated against Plaintiff and terminated her employment because of her disability.

93.     Defendant retaliated against Plaintiff because of her protected activity and terminated her.

94.     Plaintiff's disability was a motivating factor in Defendant's acts and omissions.

95.     Plaintiff's protected activity was a motivating factor in Defendant's retaliation.

96.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; stress, lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

11

# EXHIBIT A

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages; for prejudgment and postjudgment interest; for attorney's fees; for the costs and expenses of this action; and for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Nebraska Fair Employment Practice Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

Dated this 22nd day of May, 2018.

LORI FIENUP, Plaintiff

By:          /s/ Kelly K. Brandon
             Kelly K. Brandon, #20734
             kelly@employmentlawnebraska.com
             Stephanie Costello, #26309
             stephanie@employmentlawnebraska.com
             Fiedler & Timmer, P.L.L.C
             20615 Highway 370
             Gretna, NE  68028
             402-316-3060
             402-513-6501 (F)
             Attorneys of the Plaintiff

12

# EXHIBIT A

# Certificate of Service

I hereby certify that on Tuesday, May 22, 2018 I provided a true and correct copy of the Amended Complaint to the following:

Fienup,Lori, represented by Stephanie Jeanne Costello (Bar Number: 26309) service method: Electronic Service to stephanie@employmentlawnebraska.com

Pauly,Lynne, service method: No Service

American National, Inc. service method: No Service

American National Bank service method: No Service

Signature: /s/ Kelly K. Brandon (Bar Number: 20734)

EXHIBIT A

SERVICE RETURN

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI180001251
Transaction ID: 0006953994
Filing Date: 06/04/2018 11:15:33 AM CDT

Douglas District Court
1701 Farnam
Omaha          NE 68183

To:
Case ID: CI 18    1251 Lori Fienup v. American National Bank

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

American National Bank
8990 West Dodge Road
Omaha, NE 68114

9590 9402 2234 6193 0865 76

2. Article Number (Transfer from service label)

7016 1370 0001 9862 7629

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Jay Jon_    ☐ Agent
                ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Taylor Johnson    5-25-18

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

(Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _American National Bank_

At the following address: _8990 West Dodge Road_

_Omaha, NE 68114_

on the _13th_ day of _May_    _2018_    as required by Nebraska state law.

_[s] Kelly K. Brandon_

Postage $ _8.46_    Attorney for: _Plaintiff_

The return receipt for mailing to the party was signed on _May 25_, _2018_.

To: American National Bank
    8990 West Dodge Road

    Omaha, NE 68114

From: Kelly K Brandon
      20615 Highway 370
      Gretna, NE 68028

## ATTACH RETURN RECEIPT & RETURN TO COURT

## EXHIBIT A

# Certificate of Service

I hereby certify that on Monday, June 04, 2018 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Fienup,Lori, represented by Stephanie Jeanne Costello (Bar Number: 26309) service method: Electronic Service to stephanie@employmentlawnebraska.com

American National, Inc. service method: No Service

Pauly,Lynne, service method: No Service

American National Bank service method: No Service

Signature: /s/ Kelly K. Brandon (Bar Number: 20734)

EXHIBIT A

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI180001251
Transaction ID: 0006981522
Filing Date: 06/08/2018 03:30:41 PM CDT

**SERVICE RETURN**

Douglas District Court
1701 Farnam
Omaha          NE 68183

To:
Case ID: CI 18     1251 Lori Fienup v. American National Bank

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return     $ _____

Copy                      _____

Mileage ____miles         _____

   TOTAL              $ _____

Date: _____     BY: _____
                               (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail.
TO THE PARTY: _____Lynn Pauly_____

At the following address: _3620 Rainy Circle_____
_____Plattsmouth, NE 68048_____

on the _23rd_ day of _May_____ _2018_, as required by Nebraska state law.

                        _/s/ Kelly Brandon_____

Postage $ _7.83_  Attorney for: _Plaintiff_____

The return receipt for mailing to the party was signed on _May 25_, _2018_.

To: Lynne Pauly               From: Kelly K Brandon
    3620 Rainy Circle               20615 Highway 370
                                    Gretna, NE 68028
Plattsmouth, NE 68048-7149

# ATTACH RETURN RECEIPT & RETURN TO COURT

# EXHIBIT A

6/7/2018                                    USPS.com® – USPS Tracking® Results

**ALERT: AS OF APRIL 30, USPS.COM NO LONGER SUPPORTS OUTDATED BROWSERS. TO CO...**

# USPS Tracking®

FAQs ❯ (http://faq.usps.com/?articleId=220900)

## Track Another Package  ➕

Remove ✕

**Tracking Number:** 70161370000193627612

**Expected Delivery on**

## FRIDAY
# 25 MAY 2018 ⓘ         by **8:00pm** ⓘ

### ✅ Delivered

May 25, 2018 at 12:57 pm
Delivered, Left with Individual
PLATTSMOUTH, NE 68048

**Get Updates** ⌄

---

| Text & Email Updates | ⌄ |
|---|---|
| Tracking History | ⌄ |
| Product Information | ⌄ |

See Less ⌃

## Can't find what you're looking for?

EXHIBIT A

6/7/2018                                USPS.com® - USPS Tracking® Results

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment.

EXHIBIT A

# Certificate of Service

I hereby certify that on Friday, June 08, 2018 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Fienup,Lori, represented by Stephanie Jeanne Costello (Bar Number: 26309) service method: Electronic Service to stephanie@employmentlawnebraska.com

American National Bank service method: No Service

Pauly,Lynne, service method: No Service

American National, Inc. service method: No Service

Signature: /s/ Kelly K. Brandon (Bar Number: 20734)

EXHIBIT A

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI180001251
Transaction ID: 0006443906
Filing Date: 02/15/2018 04:53:09 PM CST

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| LORI FIENUP | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **AND JURY DEMAND** |
| AMERICAN NATIONAL BANK, | ) | |
| AMERICAN NATIONAL, INC. and LYNNE | ) | |
| PAULY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW, the Plaintiff, by and through her attorneys, and for her cause of action against the Defendants hereby states the following:

## INTRODUCTION

1.     This is an action under the Family Medical Leave Act (FMLA) challenging Defendants' retaliation and discrimination against Plaintiff with respect to Plaintiff's rights to FMLA-protected leave, the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), and Sections 48-1104 and 48-1114(1) of the Nebraska Fair Employment Practice Act challenging Defendants' discrimination and retaliation against her.

## JURISDICTION AND VENUE

2.     Plaintiff Lori Fienup is a resident of Glenwood, Mills County, Iowa.

3.     Defendant American National Bank is a Nebraska company with its principal place of business in Douglas County, Nebraska.

4.     The acts about which Plaintiff complains occurred in Douglas County, Nebraska.

5.     This court has original jurisdiction over the claims arising under state law and concurrent jurisdiction over the federal law claims.

6.     Defendant Lynne Pauly is a resident of Omaha, Douglas County, Nebraska.

# EXHIBIT A

7.      Venue is appropriate in this district under Neb. Rev. Stat. § 25-403.02.

## PROCEDURAL REQUIREMENTS

8.      On or about July 17, 2017, within 300 days of the acts she complains, Plaintiff Lori Fienup filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 563-2017-01760), which was duly filed with the Nebraska Equal Opportunity Commission

9.      On or about December 26, 2017, within 90 days of filing this complaint, Plaintiff Lori Fienup received her notice of right to sue from the EEOC.

## FACTUAL BACKGROUND

10.     On or about March 10, 2008, Plaintiff Lori Fienup (hereinafter "Lori") began working for Defendant American National Bank (hereinafter "ANB") as a Cash Management Specialist.

11.     On or about April 28, 2010, Lori was promoted to Lockbox Processor.

12.     On or about June 26, 2013, Lori was again promoted to Lockbox Supervisor.

13.     In November 2013, Lori was diagnosed with Parkinson's disease. Parkinson's disease is a progressive nervous system disorder that affects Lori's ability to walk, think, type, use the bathroom, and perform manual tasks. Lori's Parkinson's disease also affects Lori's normal cell growth, her neurological system, and the function of her brain.

14.     Between November and December 2013, Lori required approximately thirty-five days of FMLA leave for her disability.

15.     In 2014, Lori required no FMLA leave for her disability.

16.     Between September and December 2015, Lori required approximately forty-seven days of FMLA leave for her disability.

# EXHIBIT A

17.     In February 2016, Defendant Lynne Pauly (hereinafter "Pauly") became Lori's supervisor.

18.     On or about February 16, 2016, Lori was demoted from her Lockbox Supervisor position to Lockbox Processor.

19.     On April 18, 2016, Barb Czarnick, a human resources representative of Defendant American National Bank (hereinafter "ANB"), requested by e-mail and letter that Lori ask her doctor to file a formal request for accommodation.  At this point in time, Lori was physically shaking because of an adverse reaction to medication she was taking for her disability.

20.     On April 21, 2016, Lori formally requested a reasonable accommodation of grab bars in the bathroom and elevator access because of mobility impediments caused by her disability.

21.     Near the end of April 2016, instead of providing Lori with elevator access, the lockbox department was moved upstairs.

22.     In May 2016, the requested grab bars were installed in the bathroom.

23.     On or about May 17, 2016, Pauly referred to Lori and another employee, who had torn her ACL, as "her two gimps," to Lori's co-worker Liz Banks as well as within hearing distance of other employees.  Lori complained to Czarnick about Pauly's use of the derogatory term "gimp" in referring to herself and another employee who both had physical impairments. Upone information and belief, Lori's complaint was never investigated or addressed with Pauly.

24.     On or about May 20, 2016, Pauly asked Lori if she was stable enough to process three trays of postage through the machine.  Lori was not having any difficulty processing postage through the machine. Lori felt that Pauly's question was degrading and only made because of her disability.

EXHIBIT A

25.    On or about May 25, 2016, Pauly called Lori into her office for a meeting. During the meeting, Pauly told Lori that she was requiring her to track every task she completed and the time it took her to complete each task.

26.    On or about June 7, 2016, Pauly told Lori she made several errors in an FTNI process. FTNI is the system ANB used to process loans. Pauly told Lori she was prohibited from processing loans in FTNI because Lori had made too many errors. Upon informed belief, Glean Walker (hereinafter "Walker"), the on-call employee in Pauly's department, also had made errors in FTNI but Pauly did not subsequently prohibit Walker from processing FTNI loans as she had prohibited Lori.

27.    Lori asked Pauly if she could have more training on FTNI because Lori had only received one day of training. Upon information and belief, other employees had received more training on FTNI than Lori. Pauly refused to give Lori the same amount of training as the other employees on the FTNI system.

28.    On June 8, 2016, Lori emailed Czarnick to complain about Pauly's discrimination. Lori explained to Czarnick that she had requested more training from Pauly to correct her errors in FTNI but Pauly had refused her request.

29.    On or about June 20, 2016, Lori called Czarnick and complained again that Lynn was discriminating against her because of her disability.

30.    On or about July 6, 2016, Pauly informed Lori that she should track the tasks she completed and the time it took her to complete the tasks. Pauly told Lori that because her doctor had not put any stipulations on Lori's request for accommodations about Lori's work product, her number of lock box processed should be higher.

31.    Lori often helped out with other tasks at ANB and worked a different schedule than her co-workers. Lori tried to explain to Pauly that her different tasks and schedule affected the

EXHIBIT A

number of processing she could do. She explained that her totals were not higher because she, in addition to processing lock boxes, also researched items for customers, reset passwords for employees and customers, helped the Minnesota branch convert their lockbox customers to the WAUSAU remote deposit capture system, assisted them with any questions, helped index documents, helped process the mail, and charged customers at the end of the month for their lockbox service. Lori had over twenty customers to charge for the lockbox service, while Peggy Cooney Price, another lockbox processor, and Liston only each had one customer.

32.     Lori also explained that because her and her co-workers arrived at different times and left at different times, they received a different amount of work.

33.     Pauly ignored Lori's explanations and told Lori she needed to increase the amount of work she was completing.

34.     On or about July 12, 2016, Pauly told everyone in the lockbox department they did not have to keep track of every item they personally processed. Pauly then went over to Lori's work station and told Lori that she would still need to keep track of every item she processed and the time it took her to process it.

35.     On July 14, 2016, Pauly stated that there was going to be a rally on 30th and Ames at 5:00 p.m., near where the ANB branch Lori worked at was located. Pauly stated there was going to be an extra security officer at the bank. She also added that everyone was going to be gone besides one employee and Lori and said, "but who cares that they are still here."

36.     On July 26, 2016, Lori required one day of intermittent FMLA leave.

37.     On August 2, 2016, Lori emailed Pauly that she would need FMLA time from September 26, 2016 to September 30, 2016, in order to visit the Mayo Clinic in Rochester, Minnesota for treatment because of her disability.

EXHIBIT A

38.    On August 3, 2016, Lori emailed FMLA paperwork to Human Resources to take leave for her disability between September 26 to September 30, 2016.

39.    On August 9, 2016, Lori used one hour and a half of intermittent FMLA leave.

40.    On August 30, 2016, Pauly held a "coaching session" with Lori because she felt Lori had not informed her of her system being down fast enough even though Lori had already reported the issue to the help desk.

41.    On September 14, 2016, Pauly wrote up Lori for debiting a customer account. Lori had debited that particular customer account many times and had not been written up before. Lori asked Pauly why she was being written up for an account that she debits each month for service fees. Pauly could not provide an answer to Lori.

42.    On September 26 through 30, 2016, Lori took FMLA leave to travel to the Mayo Clinic in Rochester, Minnesota to find out if she was a candidate for deep brain stimulation (DBS) surgery.

43.    On September 28, 2016, Lori's neurologist recommended that following Lori's DBS surgery that Lori would need "two to three months for [her] to get back to her usual self and do daily routine work." Lori's neurologist's recommendation was provided to ANB through the FMLA paperwork she submitted.

44.    On October 4, 2016, Lori required a half day of intermittent FMLA leave.

45.    On October 10 through 14, 2016, Lori required 26.25 hours of FMLA leave because of her disability.

46.    On October 25, 2016, Lori emailed Pauly and Czarnick that she had been approved for the DBS surgery on December 21, 2016; had an appointment scheduled for December 20, 2016; and that she would begin her FMLA leave starting on December 19, 2016.

# EXHIBIT A

47.     On October 13, 2016, Lori provided Czarnick with a written accommodation request asking for help getting to and from the building in her wheelchair and also a wheelchair accessible bathroom. On November 21, 2016, Pauly put Lori on a 90-day action plan. Pauly wrote Lori up for an alleged delay in processing a customer's deposit. The customer received the deposit less than an hour past normal business hours, the customer did not complain about the delay.

48.     On November 30, 2016, Czarnick declined Lori's accommodation request for help getting get to and from the building in her wheelchair and also declined to provide a wheelchair accessible bathroom.

49.     On December 15 through 16, 2016, Lori required 9 hours of intermittent FMLA leave because of her disability.

50.     On December 19, 2016, Lori began FMLA leave for her DBS surgery.

51.     On December 21, 2016, Lori underwent DBS surgery.

52.     On or about January 2 through February 22, 2017, Lori required FMLA leave to recover from her DBS surgery.

53.     On or about February 23, 2017, Lori returned to work.

54.     Lori's surgery greatly improved her performance at work. The surgery enabled her to walk again without a wheelchair or walker. It also improved the legibility of Lori's writing and increased her typing speed, which allowed Lori to complete tasks at a faster rate than before the surgery.

55.     On or about March 30 through April 3, 2017, Lori was sick with norovirus and did not go to work.

56.     On or about April 4, 2017, Lori returned to work.

57.     On or about April 4, 2017, Pauly yelled at Lori in front of her co-workers and accused her of falsifying her processing time logs because her performance had greatly improved.

EXHIBIT A

58.     On April 5, 2017, Lori emailed Czarnick about Pauly again. Lori asked for advice on what to do because Pauly was continuing to single Lori out and Pauly had accused Lori of falsifying her processing time logs because Pauly "assum[ed] [Lori] [was] slow because of [her] condition." Czarnick asked for additional information and then told Lori she wanted to get both sides of the story.

59.     On April 6, 2017, Lori followed up with Czarnick asking when they would be able to meet.  Lori did not hear back from Czarnick.

60.     On April 7, 2017, Pauly and Czarnick, as representatives of ANB, terminated Lori.

## COUNT I
### VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA)
### DISCRIMINATION/RETALIATION

61.     Plaintiff repleads paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants are and were at all times material an "employer" within the meaning of the Family and Medical Leave Act (hereinafter "FMLA").

63.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the FMLA.

64.     Beginning in November 2013, Plaintiff was diagnosed with Parkinson's Disease, a "serious health condition" within the meaning of the FMLA.

65.     Plaintiff was entitled to intermittent protected leave under the FMLA.

66.     Plaintiff invoked her right to take intermittent protected leave under the FMLA.

67.     Plaintiff's leave is a protected activity under the FMLA.

68.     Defendants discriminated and retaliated against Plaintiff, and terminated her for exercising her rights under the FMLA.

## EXHIBIT A

69.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to her lost wages, benefits, future earnings, and other benefits of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount that will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for attorney fees, for the costs and expenses of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purposes of the Family and Medical Leave Act.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) OF 2008
## DISABILITY DISCRIMINATION/RETALIATION

70.     Plaintiff repleads paragraphs 1 through 69 as if fully set forth herein.

71.     Defendants are and were at all times material an "employer" within the meaning of the ADA Amendments Act of 2008 (hereinafter "ADAAA")

72.     Plaintiff's Parkinson's Disease is a physical impairment.

73.     Plaintiff's Parkinson's Disease substantially limits one or more of Plaintiff's major life activities, including, but not limited to, thinking, walking, performing manual tasks, concentrating, communicating.

74.     Plaintiff's Parkinson's Disease also substantially affects the normal functioning of her neurological and nervous systems.

75.     Plaintiff is disabled within the meaning of the ADAAA.

76.     Defendant perceived Plaintiff as disabled within the meaning of the ADAAA.

77.     Plaintiff is a qualified individual under the ADAAA and could perform the essential functions of her position with or without a reasonable accommodation.

78.     Plaintiff requested reasonable accommodations.

EXHIBIT A

79.    Plaintiff complained of disability discrimination.

80.    Defendant discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment when it terminated her in violation of the ADAAA.

81.    Plaintiff's disability was a motivating factor in Defendant's discrimination.

82.    Plaintiff's protected activities were motivating factors in Defendant's retaliation and Plaintiff's termination.

83.    Defendants, personally or by their representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Plaintiff, discrimination against Plaintiff in violation of the ADAAA, and by doing so are subject to punitive damages.

84.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for prejudgment and postjudgment interest, for attorney fees, for the costs and expenses of this action, for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purposes of the Americans with Disabilities Act Amendments Act of 2008.

## COUNT III
### VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT
### DISABILITY DISCRIMINATION/RETALIATION

85.    Plaintiff repleads paragraphs 1 through 84 as if fully set forth herein.

EXHIBIT A

86.     Plaintiff is disabled within the meaning of the Nebraska Fair Employment Practice Act.

87.     Defendants are and were at all times material an "employer" within the meaning of the Nebraska Fair Employment Practice Act.

88.     Plaintiff's Parkinson's Disease substantially limited one or more of Plaintiff's major life activities, including, but not limited to, thinking, walking, performing manual tasks, concentrating, communicating.

89.     Plaintiff's Parkinson's Disease also substantially affected the normal functioning of her neurological and nervous systems.

90.     Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

91.     Plaintiff engaged in protected activity by requesting an accommodation and complaining about the disability discrimination she experienced.

92.     Defendant discriminated against Plaintiff and terminated her employment because of her disability.

93.     Defendant retaliated against Plaintiff because of her protected activity and terminated her.

94.     Plaintiff's disability was a motivating factor in Defendant's acts and omissions.

95.     Plaintiff's protected activity was a motivating factor in Defendant's retaliation.

96.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; stress, lost enjoyment of life; lost wages; benefits; and other emoluments of employment.

EXHIBIT A

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages; for prejudgment and postjudgment interest; for attorney's fees; for the costs and expenses of this action; and for appropriate equitable and injunctive relief, including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Nebraska Fair Employment Practice Act.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

Dated this 15th day of February 2018.

LORI FIENUP, Plaintiff

By: _____

Kelly K. Brandon, # 20734
kelly@employmentlawnebraska.com
Stephanie Costello, # 26309
stephanie@employmentlawnebraska.com
Fiedler & Timmer, P.L.L.C
20615 Highway 370
Gretna, NE  68028
402-316-3060
402-513-6501 (F)
Attorneys of the Plaintiff

# EXHIBIT A

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI180001251
Transaction ID: 0006860704
Filing Date: 05/14/2018 12:27:58 PM CDT

IN THE DISTRICT COURT OF DOUGLAS COUNTY NEBRASKA

| | | |
|---|---|---|
| LORI FIENUP, | ) | Case No.: CI08001251 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PRAECIPE** |
| | ) | |
| AMERICAN NATIONAL BANK, | ) | |
| AMERICAN NATIONA, INC. and | ) | |
| LYNN PAULY, | ) | |
| | ) | |
| Defendants. | | |

**TO THE CLERK OF SAID COURT:**

Please issue summons for service by Plaintiff by Certified Mail with a copy of the Complaint and Jury Demand upon:

American National Bank
8990 West Dodge Road
Omaha, NE  68114

And

Lynn Pauly
3620 Rainy Circle
Plattsmouth, NE  68048-7149

Dated this 14th day of May, 2018.

LORI FIENUP,
Plaintiff

By:    /s/ Kelly K. Brandon
Kelly K. Brandon, # 20734
kelly@employmentlawnebraska.com
Stephanie Costello, #26309
stephanie@employmentlawnebraska.com
**FIEDLER & TIMMER, P.L.L.C.**
20615 Highway 370
Gretna, NE  68028
Telephone: (402) 316-3060
Fax: (402) 513-6501
ATTORNEYS FOR PLAINTIFF

# EXHIBIT A

| Image ID:<br>D00538181D01 | **SUMMONS** | Doc. No.   538181 |

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha          NE 68183

Lori Fienup v. American National Bank

Case ID: CI 18     1251

TO:  American National Bank

**FILED BY**
Clerk of the Douglas District Court
05/14/2018

You have been sued by the following plaintiff(s):

    Lori Fienup

Plaintiff's Attorney:     Kelly K Brandon
Address:                  20615 Highway 370
                          Gretna, NE 68028

Telephone:               (402) 316-3060

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date:  MAY 14, 2018        BY THE COURT:  *John M. Friend*
                                              Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

        American National Bank
        8990 West Dodge Road
        Omaha, NE 68114

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue, and file with the court clerk proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first.

# EXHIBIT A

| SERVICE RETURN | Doc. No.   538181 |

Douglas District Court
1701 Farnam
Omaha                    NE 68183

To:
Case ID: CI 18   1251 Lori Fienup v. American National Bank

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                        _____

Mileage _____miles        _____

  TOTAL             $ _____

Date: _____    BY: _____
                                        (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: American National Bank          From: Kelly K Brandon
    8990 West Dodge Road                   20615 Highway 370
                                           Gretna, NE 68028
    Omaha, NE 68114

ATTACH RETURN RECEIPT & RETURN TO COURT

EXHIBIT A

Image ID:                          **SUMMONS**                    Doc. No.   538182
D00538182D01

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
                    1701 Farnam
                    Omaha          NE 68183


Lori Fienup v. American National Bank
                                            Case ID: CI 18     1251


TO:  Lynne Pauly
                                            **FILED BY**
                                    Clerk of the Douglas District Court
                                            05/14/2018

You have been sued by the following plaintiff(s):

     Lori Fienup




Plaintiff's Attorney:      Kelly K Brandon
Address:                   20615 Highway 370
                           Gretna, NE 68028

Telephone:                 (402) 316-3060

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  MAY 14, 2018        BY THE COURT:   John M. Friend
                                           Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

          Lynne Pauly
          3620 Rainy Circle
          Plattsmouth, NE 68048-7149

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.


# EXHIBIT A

| SERVICE RETURN | Doc. No.   538182 |
|---|---|

Douglas District Court
1701 Farnam
Omaha                    NE 68183

To:
Case ID: CI 18     1251 Lori Fienup v. American National Bank

Received this Summons on _____,_____. I hereby certify that on

_____,_____ at _____ o'clock __M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                        _____

Mileage ____miles        _____

    TOTAL            $ _____

Date: _____        BY: _____
                                   (Sheriff or authorized person)

### CERTIFIED MAIL
### PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Lynne Pauly              From:  Kelly K Brandon
    3620 Rainy Circle                20615 Highway 370
                                     Gretna, NE 68028
    Plattsmouth, NE 68048-7149

## ATTACH RETURN RECEIPT & RETURN TO COURT

# EXHIBIT A